B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Steven Weiss, Trustee | **DEFENDANTS**<br>U.S. Bank National Association as Indenture Trustee of the GMAC Home Equity Loan Trust 2004 HEA, and Real Time Resolutions, Inc. |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Steven Weiss, Esq., Shatz, Schwartz and Fentin, P.C.,<br>1441 Main St., Suite 1100, Springfield, MA 01103<br>sweiss@ssfpc.com (413) 737-1131 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This is an adversary proceeding (i) to determine the validity of a mortgage held or serviced by the Defendant Real Time Resolutions, Inc. on real property constituting property of the bankruptcy estate, (ii) to avoid the mortgage, and (iii) to preserve the value of the mortgage for the estate.

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 46,152.00 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Zulma J. Lopez | BANKRUPTCY CASE NO.<br>18-30789 | | |
| DISTRICT IN WHICH CASE IS PENDING<br>Massachusetts | DIVISION OFFICE<br>Western | NAME OF JUDGE<br>Elizabeth D. Katz | |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. | |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE | |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) *[signature]* | | | |
| DATE   March 6, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Steven Weiss, Trustee | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

| | |
|---|---|
| **In re:** <br><br> **ZULMA J. LOPEZ,** <br><br> Debtor, <br><br> ——————————————— <br><br> **STEVEN WEISS, TRUSTEE,** <br> Plaintiff, <br><br> vs. <br><br> **U.S. BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE OF THE GMAC HOME EQUITY LOAN TRUST 2004 HEA, and REAL TIME RESOLUTIONS, INC.,** <br><br> Defendant | **Chapter 7** <br> **Case No. 18-30789-EDK** <br><br><br> **Adversary Proceeding** <br><br> **No. _____** |

## COMPLAINT

This is an adversary proceeding (i) to determine the validity of a mortgage held or serviced by the Defendant Real Time Resolutions, Inc. on real property constituting property of the bankruptcy estate, (ii) to avoid the mortgage, and (iii) to preserve the value of the mortgage for the estate.

### Parties

1. Steven Weiss is Chapter 7 Trustee (the "Trustee") in the case of Zulma J. Lopez (the "Debtor") and an individual with a business address of Shatz, Schwartz and Fentin, P.C., 1441 Main Street, Springfield, MA 01103.

2. The Defendant U.S. Bank National Association, as Indenture Trustee of the GMAC Home Equity Loan Trust 2004 HEA (the "Defendant" or "U.S. Bank") is a national banking association with an address of 425 Walnut Street, Cincinnati, Ohio 45202.

3. The Defendant Real Time Resolutions, Inc. ("Real Time") is a corporation with an address of 1349 Empire Central Drive, Suite 150, Dallas, TX 75247-4029.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (E), (K), and (O).

5. Venue in this Court is proper pursuant to 28 U.S.C. §1409.

## FACTS

6. On September 13, 2018 the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code.

7. The Plaintiff was appointed as Chapter 7 Trustee and continues to serve in that capacity.

8. The Debtor owns a one-half interest (as a joint tenant) in property at 409 South Elm Street, Holyoke, Massachusetts (the "Property").

9. The Debtor acquired title to the Property through two deeds recorded on July 28, 2004. One deed (the "First Deed") was recorded in the Hampden County of Deeds at Book 14370, Page 319. A copy of the First Deed is annexed hereto as <u>Exhibit "A"</u>. The other deed (the "Second Deed") was for registered land, and was recorded in the Hampden County Registry of the Land Court as document 158,370 on Certificate 31798. A copy of the Second Deed is annexed hereto as <u>Exhibit "B"</u>.

2

10. On September 9, 2005 the Debtor and her co-owner executed a mortgage (the "Mortgage") to GMAC Mortgage Corporation, securing a home equity loan in an amount of up to $100,000.00. The Mortgage was recorded in the Hampden County Registry of Deeds on November 16, 2005 at Book 15497, Page 466. A copy of the Mortgage is annexed hereto as Exhibit "C".

11. The property description annexed to the Mortgage includes only that portion of the Property acquired by the Debtor in the First Deed.

12. On information and belief, the property described in the First Deed is a small portion of the Property, four feet wide and 125 feet long.

13. The Mortgage was not recorded in the Hampden County Registry of the Land Court.

14. On March 2, 2015 the Mortgage was assigned to the Defendant. The assignment was recorded on March 3, 2015 in the Hampden County Registry of Deeds at Book 20612, Page 200. A copy of the assignment is annexed hereto as Exhibit "D".

15. On information and belief, Real Time Resolutions, Inc. is serving the debt secured by the Mortgage.

16. On information and belief, the amount owed by the Debtor as of the date of the filing of her Chapter 7 petition was approximately $46,152.00.

### COUNT I

(Determination of Secured Status and Avoidance of Lien
11 U.S.C.§§506(d) and 544)

17. The Trustee repeats and realleges the statements and allegations contained in Paragraphs 1 through 16 of this Complaint, and incorporates same herein by reference.

18. In pertinent part 11 U.S.C. §544(a)(3) states:

    (a)    The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the Trustee or any other creditor, the rights and powers of, or may avoid any transfer property of the Debtor or any obligation incurred by the Debtor that is voidable by –

    (3)    A bona fide purchaser of real property, other than fixtures, from the debtor against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

19. The Trustee states that the as the Mortgage: (a) fails to include a description of that portion of the Property acquired in the Second Deed; and (b) as the Mortgage was not recorded in the Hampden County Registry of the Land Court, the Mortgage does not constitute a perfected and valid lien upon the Debtor's interest in the Property described in the Second Deed.

20. Pursuant to 11 U.S.C. §§ 506(d) and 544 and Fed. R. Bankr. P. 7001(2), the Trustee requests that this Court enter a judgment declaring that Mortgage does not constitute a perfected and valid lien upon the Debtor's interest in the Property described in the Second Deed.

## COUNT II

### (Preservation of Avoided Transfers for Estate– 11 U.S.C. §551)

21. The Trustee repeats and realleges the statements and allegations contained in Paragraphs 1 through 20 of this Complaint, and incorporates same herein by reference.

22. Pursuant to 11 U.S.C. §551, the Trustee requests that this Court preserve the Mortgage lien for the benefit of the estate.

WHEREFORE, the Trustee respectfully prays:

1. On Count I, that this Court enter an order that the Mortgage lien of the Defendant is void against the Debtor's interest in the Property described in the Second Deed, pursuant to 11 U.S.C. § 544;

2. On Count II, that the lien be preserved for the estate pursuant to 11 U.S.C. § 551; and

3. For such other relief as the Court deems just.

Dated this 7th day of March, 2019.

>Respectfully submitted,
>STEVEN WEISS, PLAINTIFF
>
>By: /s/ Steven Weiss
>Steven Weiss, Esquire
>sweiss@ssfpc.com
>BBO #545619
>Shatz, Schwartz and Fentin, P.C.
>1441 Main Street, Suite 1100
>Springfield, MA  01103
>Telephone: 413-737-1131
>Facsimile: 413-736-0375

18\0320\A.P\Complaint.1601

Bk 14370 Pg319 #68325
07-28-2004 @ 03:49p

EXHIBIT A

## WARRANTY DEED

Locus: 409 So. Elm Street (formerly 409 Elm Street) Holyoke, MA 01040

**KNOW ALL MEN BY THESE PRESENTS**, That We, CHRISTEL A. PAYNE, of 4201 Nomis Drive, Fairfax, Fairfax County, Virginia, PAULA R. ELLISON, of 8229 Crackling Fire Drive, Gainesville, Prince William County, Virginia, and JOHN H. GERHARDT, of 7750 Garner Drive, Manassas, Prince William County, Virginia, in consideration of LESS THAN ONE HUNDRED AND 00/100 ($100.00) DOLLARS, grant to MIGUEL A. PEREZ and ZULMA J. LOPEZ,* as joint tenants with the right of survivorship and not as tenants in common, both of 45 Central Street, Springfield, Hampden County, Massachusetts, with Warranty Covenants, a certain parcel of land in Holyoke, Hampden County, Massachusetts, described as follows:

| | |
|---|---|
| NORTHERLY | along said Elm Street, four (4) feet; thence |
| WESTERLY | at right angles to the last described line, one hundred and twenty-five (125) feet to an iron pipe; thence |
| SOUTHERLY | at right angles to the last described line, and along land now or formerly of one Frost, four (4) feet; thence |
| EASTERLY | at right angles to the last described line, one hundred and twenty-five (125) feet. |

Being the same premises conveyed to the Grantors herein by deed of John H. Gerhardt dated August 21, 1996 and recorded in Hampden County Registry of Deeds on August 22, 1996 in Book 9597, Page 325.

\* AND IN ADDITION WITH THE INTENT THAT THE GRANTEE, ZULMA J. LOPEZ HOLD THE SAME AS A DECLARATION OF HOMESTEAD IN ACCORDANCE WITH M.G.L. CHAPTER 188, SECTION 1.

Bk 14370   Pg 320   #68325

EXECUTED as a sealed instrument this 9th day of July, 2004.

| WITNESS: _____ | _Christel A. Payne_ CHRISTEL A. PAYNE |
| WITNESS: _____ | _Paula R. Ellison_ PAULA R. ELLISON |
| WITNESS: _____ | _John H. Gerhardt_ JOHN H. GERHARDT |

COMMONWEALTH OF VIRGINIA

Fairfax ss.

On this 9th day of July, 2004, before me, the undersigned Notary Public, personally appeared Christel A. Payne, proved to me through satisfactory evidence of identification, which was a _Christel Q. Payne_____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_Dorothy A. Diggs_
DOROTHY A. DIGGS
Notary Public

My Commission Expires: Nov 30, 06

Bk 14370  Pg 321  #68325

**COMMONWEALTH OF VIRGINIA**

Prince William, ss.

On this _11th_ day of July, 2004, before me, the undersigned Notary Public, personally appeared Paula R. Ellison, proved to me through satisfactory evidence of identification, which was a _Paula R. Ellison_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_Laura Torbert_
LAURA TORBERT
Notary Public

My Commission Expires: _12-31-06_

**COMMONWEALTH OF VIRGINIA**

Prince William, ss.

On this _11th_ day of July, 2004, before me, the undersigned Notary Public, personally appeared John H. Gerhardt, proved to me through satisfactory evidence of identification, which was a _John H. Gerhardt_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_Laura Torbert_
LAURA TORBERT
Notary Public

My Commission Expires: _12-31-06_

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

Doc:158,370 07-28-2004 3:26
Ctf#:31798

## WARRANTY DEED    EXHIBIT B

KNOW ALL MEN BY THESE PRESENTS, That We, CHRISTEL A. PAYNE, of 4201 Nomis Drive, Fairfax, Fairfax County, Virginia, PAULA R. ELLISON, of 8229 Crackling Fire Drive, Gainesville, Prince William County, Virginia, and JOHN H. GERHARDT, of 7750 Garner Drive, Manassas, Prince William County, Virginia, in consideration of ONE HUNDRED THIRTY-FIVE THOUSAND AND 00/100 ($135,000.00) DOLLARS, grant to MIGUEL A. PEREZ and ZULMA LOPEZ, as joint tenants with the right of survivorship and not as tenants in common, both of 45 Central Street, Springfield, Hampden County, Massachusetts, with Warranty Covenants, a certain parcel of land in Holyoke, Hampden County, Massachusetts, described as follows:

SOUTHEASTERLY   by Elm Street fifty-six (56) feet;

SOUTHWESTERLY   by land now or formerly of Thomas Gallivan one hundred and twenty-five (125) feet;

NORTHWESTERLY   by land now or formerly of Eliza Frost fifty-six (56) feet; and

NORTHEASTERLY   by other land of said Thomas Gallivan one hundred and twenty-five (125) feet.

Said parcel being shown as Lot A on plan hereinafter mentioned.

All of said boundaries are determined by the Land Court to be located as shown on a subdivision plan made by C.B. Humphrey, Surveyor for Court, dated March 26, 1921, a copy of a portion of which is filed with Certificate of Title No. 863.

Being the same premises conveyed to the Grantor herein by Certificate of Title No. 27708 recorded in Hampden County Registry of Deeds, Land Registration Office in Land Court Book 153, Page 28.

Locus: 409 S. Elm Street (formerly 409 Elm Street) Holyoke, MA 01040



EXECUTED as a sealed instrument this 9th day of July, 2004.

_____        _____
WITNESS:                         CHRISTEL A. PAYNE

_____        _____
WITNESS:                         PAULA R. ELLISON

_____        _____
WITNESS:                         JOHN H. GERHARDT


COMMONWEALTH OF VIRGINIA

Fairfax ss.

On this 9th day of July, 2004, before me, the undersigned Notary Public, personally appeared Christel A. Payne, proved to me through satisfactory evidence of identification, which was a _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_____
DOROTHY A. DIGGS
Notary Public

My Commission Expires: Nov 30, 06

COMMONWEALTH OF VIRGINIA

Prince William, ss.

On this _11th_ day of July, 2004, before me, the undersigned Notary Public, personally appeared Paula R. Ellison, proved to me through satisfactory evidence of identification, which was a _Paula R. Ellison_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_Laura Torbert_
LAURA TORBERT
Notary Public

My Commission Expires: _12-31-06_

COMMONWEALTH OF VIRGINIA

Prince William, ss.

On this _11th_ day of July, 2004, before me, the undersigned Notary Public, personally appeared John H. Gerhardt, proved to me through satisfactory evidence of identification, which was a _John H. Gerhardt_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_Laura Torbert_
LAURA TORBERT
Notary Public

My Commission Expires: _12-31-06_

BK 15497 P466 #101715
11-16-2005 @ 07:07a

EXHIBIT C

Account No.: 9984360 ****
Branch No.: 996
Loan Product: BR 80% CLTV Standalone

MIN 1000697-8250998436-4

# MORTGAGE  ZL M·A·P

## THIS MORTGAGE SECURES FUTURE ADVANCES

THIS MORTGAGE, as amended and extended *(this "Mortgage")* is signed to secure advances under a GMAC Home Equity Line of Credit agreement *(the "Agreement")*; it is dated as of September 9, 2005, and is made by Zulma Lopez and Miguel Perez, wife and husband who reside(s) at 409 South Elm Street, Holyoke, Massachusetts 01040, as mortgagor(s), who irrevocably mortgages, grants and conveys to GMAC Mortgage Corporation, a Pennsylvania Corporation, 100 Witmer Road, Horsham, PA 19044-0963 (herein "GMAC") and the Mortgage Electronic Registration Systems, Inc., P.O. Box 2026, Flint, MI 48501-2026 ("MERS") acting solely as nominee for GMAC and GMAC's successors and assigns under this Mortgage, as mortgagee.
f/k/a Mihael A. Perez

Throughout this Mortgage, "we", "us" and "our" refer to mortgagor(s). "GMAC" refers to GMAC Mortgage Corporation, a Pennsylvania Corporation located at 100 Witmer Road, Horsham, PA 19044-0963 or its assigns. The "Account" refers to the Home Equity line of credit account established by GMAC under the Agreement. "Borrower" refers to each person who signs the Agreement as borrower. The Agreement and this Mortgage, taken together, are called the "Credit Documents." "Signer" refers to any person (other than GMAC) who has signed a Credit Document.

## DESCRIPTION OF SECURITY

By signing this Mortgage, we mortgage, grant and convey to MERS acting solely as a nominee for GMAC, with MORTGAGE COVENANTS, subject to the terms of this Mortgage, (a) the real estate located at 409 South Elm Street, Holyoke, County of Hampden, Commonwealth of Massachusetts 01040, more fully described in Schedule A; (b) all buildings and other structures on the property; (c) all rights we may have in any road, alley, easement or license regarding the property or in any mineral, oil, gas or water which is part of the property; (d) all rents and royalties from the property; (e) all proceeds of any insurance on the property and all refunds of premiums on such insurance; (f) all proceeds of any taking (or threatened taking) of the property by any governmental authority *("condemnation")*; and (g) all fixtures on the property at any time *(collectively, the "Property")*.

The Property includes all rights and interests which we now have or which we may acquire in the future. For example, if the security mortgaged under this Mortgage is a leasehold estate and we subsequently acquire fee title to the Property, the rights and interests granted to MERS acting solely as a nominee for GMAC by this Mortgage will include the fee title that we acquire. This Mortgage is also a Security Agreement under the Massachusetts Uniform Commercial Code and we hereby grant MERS acting solely as a nominee for GMAC a security interest in the personal property described in (d) through (f) above.

This Mortgage is upon the STATUTORY CONDITION, for any breach of which GMAC shall have the STATUTORY POWER OF SALE.

## SECURED OBLIGATIONS

THIS MORTGAGE IS GIVEN TO SECURE AN OPEN-END CREDIT PLAN AS DEFINED IN MASS. GEN. LAWS CHAP. 140D, SECTION 1.

We have signed this Mortgage to secure payment to GMAC of up to $100,000.00, plus FINANCE CHARGES and any other amounts due GMAC under the Agreement *(the "Total Balance Outstanding")* and to secure performance by Borrower under the Agreement and our performance of the covenants of this Mortgage *(collectively, the "Secured Obligations")*. GMAC's rights under this Mortgage are in addition to its rights under applicable law.

## PRIORITY OF ADVANCES

The lien of this Mortgage will attach on the date this Mortgage is recorded. The indebtedness evidenced by the Credit Documents is a revolving indebtedness. The Credit Documents provide that amounts may be advanced, repaid and readvanced from time to time in accordance with the terms and provisions of the Agreement. Accordingly, the aggregate advances during the term of the Credit Documents may exceed the Credit Limit. However, the Total Balance Outstanding less FINANCE CHARGES at any time *(the "Earning Balance Outstanding")* shall never exceed the Credit Limit, except for advances made to protect the lien of this Deed of Trust. We agree that the lien and security title of this Deed of Trust shall not be deemed released or extinguished by operation of law or implied intent of the parties if the Total Balance Outstanding is zero as of the date of this Deed of Trust or is from time to time reduced to zero by payments made to GMAC.

GMAC-MA

Bk 15497    Pg 467    #101715

### REPRESENTATIONS AND DUTIES

We promise that, except for Permitted Liens: (a) we own the Property; (b) we have the right to mortgage the Property to GMAC; and (c) there are no outstanding claims or charges against the Property. The term "Permitted Lien" means (x) any mortgage, deed to secure debt or deed of trust ("*security instrument*") disclosed to GMAC by any Signer in applying for the Account, to the extent that the amount secured by such security instrument does not exceed the amount disclosed on such application; and (y) any liens, claims and restrictions of record that do not individually or collectively have a material adverse impact upon GMAC's security, the value of the Property or the Property's current use.

Each of us gives a general warranty of title to GMAC. This means that each of us will be fully responsible for any losses which GMAC suffers because someone has rights in the Property other than Permitted Liens. We promise that we will defend our ownership of the Property against any claims of such right.

We will neither take nor permit any action to partition, subdivide or change the condition of title to all or any part of the Property. We will not amend any Permitted Lien without GMAC's prior written consent.

### CERTAIN PROVISIONS OF THE AGREEMENT

We understand that GMAC may, under certain circumstances set forth in the Agreement, cancel its obligation to make future advances and/or require repayment at once of the Total Balance Outstanding.

Under the Agreement, FINANCE CHARGES are based on the "prime rate" published in <u>The Wall Street Journal</u> or in certain circumstances the "prime rate" published in <u>The New York Times</u> or a similar index selected by GMAC. The rate of FINANCE CHARGES changes on a daily basis as the index or the amount outstanding under the Agreement increases or decreases. We understand that Borrower will not receive advance notice of such changes.

### PROMISES AND AGREEMENTS

We agree with GMAC as follows:

1. **TIMELY PAYMENT.** Except as limited by paragraph 10 below, Borrower shall pay when due, without postponement or extension, all sums owed GMAC under the Credit Documents.

2. **APPLICATION OF PAYMENTS.** All payments shall be applied by GMAC as set forth in the Agreement.

3. **MORTGAGES AND DEEDS OF TRUST; CHARGES; LIENS.** We shall make payments when due and perform all our obligations under any mortgage, deed of trust or other security agreement on the Property.

We shall pay or cause to be paid when due all loans, taxes, assessments, charges, fines, impositions and rents of any kind relating to the Property ("*Assessments*"). Receipts evidencing such payments shall be delivered to GMAC upon its request. Except for Permitted Liens, we shall not allow any encumbrance, charge or lien on the Property to become prior to this Mortgage.

4. **HAZARD INSURANCE; CONDEMNATION.**

(a) We shall, at our cost, keep all improvements on the Property insured against loss caused by hazards included in the term "extended coverage" or by other hazards GMAC may reasonably specify. Hazard insurance shall be in an amount equal to the lesser of (i) the full replacement cost of the building that is part of the Property or (ii) the amount of this Mortgage plus the total amount of all Permitted Liens; but never less than the amount necessary to satisfy any coinsurance requirement contained in the insurance policy.

We may choose the insurance company, subject to approval by GMAC which may not be unreasonably withheld. All insurance policies and renewals must be in a form acceptable to GMAC and must include a standard mortgagee clause in favor of GMAC. GMAC shall have the right to hold the policies and renewals, subject to the terms of any Permitted Liens. If we pay the premiums directly, we shall provide GMAC with all renewal notices and, if requested by GMAC, all receipts for premiums. If policies and renewals are held by any other person, we shall supply copies of them to GMAC within ten calendar days after they are issued.

In the event of loss, we shall give prompt notice to the insurance company and GMAC. GMAC may file a proof of loss if we fail to do so promptly.

(b) The proceeds of any condemnation of the Property shall be paid to GMAC, subject to any Permitted Liens. We shall give GMAC notice of any threatened condemnation and sign all documents required to carry out this paragraph 4. No condemnation settlement may be made without GMAC's prior written approval which shall not be unreasonably withheld.

(c) Subject to the terms of any Permitted Lien, GMAC may elect that the proceeds of any insurance or condemnation (after payment of all reasonable costs, expenses and attorneys' fees paid or incurred by GMAC and us) shall be applied to pay the Secured Obligations, to repair or reconstruct the Property, and/or pay us for our loss. In the event that such proceeds are not used entirely for repair and reconstruction, we shall provide GMAC with a new appraisal or valuation of the Property, conducted by a person or entity and in a form reasonably acceptable to GMAC, unless GMAC waives this requirement in writing. The receipt of proceeds shall not cure or waive any default or notice of default under this Mortgage or invalidate any act done pursuant to such notice.

If the Property is abandoned by us, or if we fail to respond to GMAC in writing within 30 calendar days from the date notice of a proposed insurance or condemnation settlement is given to us, GMAC may settle the claim, collect the proceeds and apply them as set forth above.

If the Property is acquired by GMAC, all of our right, title and interest in and to any insurance or condemnation proceeds shall become the property of GMAC to the extent of the sums secured by this Mortgage.

5. **MAINTENANCE OF THE PROPERTY; LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** We shall: use, improve and maintain the Property in compliance with law; keep the Property in good repair and pay when due all repair costs; prevent waste, impairment and/or deterioration of the Property; and comply with the provisions of any lease of the Property.

If the Property is part of a condominium project or a planned unit development, we shall promptly perform all of our obligations under the governing documents of the project or development.

6. **PROTECTION OF GMAC SECURITY.** We shall appear in and defend any action or proceeding which may affect the security of GMAC under this Mortgage or result in a violation of paragraph 3 above. If such an action is filed, we violate this Mortgage or Borrowers violate the Agreement, then GMAC may disburse funds and do whatever it believes necessary to protect the security of this Mortgage. In doing so, GMAC shall give us notice but it need not make demand or release us from any obligation.

Any amounts paid by GMAC under this paragraph 6, with FINANCE CHARGES at the variable rate in effect under the Agreement, shall be paid by us upon demand. Until paid by us, such amounts are secured by this Mortgage. GMAC is not required to incur any expense or take any action under this Mortgage and no action taken shall release us from any duty.

7. **INSPECTION.** Representatives of GMAC may inspect the Property from time to time. Except in an emergency, GMAC must first give notice specifying reasonable cause for the inspection.

8. **FINANCE CHARGES AFTER END OF ACCOUNT AND/OR JUDGMENT.** To the extent permitted by law, we agree that FINANCE CHARGES after the end of the Account and/or after a judgment is entered shall continue to accrue at the rates and in the manner specified in the Agreement.

9. **OUR CONTINUING DUTIES AND GMAC'S RIGHTS; WAIVERS.** No waiver of any GMAC right under the Credit Documents shall release or limit our liability, Borrower's liability or that of our successors or Borrower's successors, nor shall any waiver affect the lien or priority of this Mortgage. GMAC shall not be required to start proceedings against any successor or modify payment terms by reason of any demand made by us or any successor.

No GMAC act or failure to act shall waive any right under this Mortgage. All waivers must be in writing and signed by GMAC; they shall apply only to the extent and with respect to the event specified in the writing. Obtaining insurance, or paying taxes, other liens or charges shall not be a waiver of GMAC's right to demand payment at once of the sums secured by this Mortgage in the event of a default under the Credit Documents.

10. **SUCCESSORS AND ASSIGNS; JOINT AND SEVERAL LIABILITY; CO-SIGNERS.** This Mortgage shall bind us and our respective successors and permitted assigns for the benefit of GMAC and its successors and assigns. All agreements made by us or any successor are joint and several and may be enforced against each of us or any successor.

Any Signer who does not execute the Agreement (a) is co-signing only to encumber that person's interest in the Property and to release all homestead, dower, curtesy, appraisement, evaluation, redemption, reinstatement, stay, extension, exemption and moratorium laws now existing or hereafter enacted, (b) is not personally liable under the Credit Documents, and (c) agrees that GMAC and any Signer may modify either Credit Document, without consent and without modifying the interests of the rest of us under this Mortgage.

11. **NOTICES.** All notices shall be in writing. Except where applicable law requires otherwise:

(a) GMAC notices shall be hand delivered or mailed by first class, registered or certified mail to the address of the Property or to such other address specified by the addressee in a written notice given to GMAC. Any GMAC notice shall be considered given on the day it is deposited in the U.S. mail or is hand-delivered.

-3-

Bk 15497 Pg 469 #101715

(b) Our notices shall be mailed to GMAC by first class, registered or certified mail to the address for such notices specified on our most recent monthly statement under the Agreement or to such other address specified by GMAC in a written notice given to us. Any such notice shall be considered given on the day it is received by GMAC.

12. GOVERNING LAW. This Mortgage will be governed by federal and Massachusetts law. If any provision is invalid, illegal, or unenforceable, this Mortgage shall be interpreted as if such provision had never been included.

13. COPIES. We shall receive copies of the Credit Documents at the time they are signed or after this Mortgage is recorded.

14. EXERCISING REMEDIES. GMAC may exercise all of the rights and remedies provided by the Credit Documents or law, and any of these rights and remedies may be exercised individually or jointly, once or a number of times. The parties to this document are subject to the provision for Arbitration as set forth in the Agreement which is incorporated by reference as if set forth at length herein.

15. EVENTS OF DEFAULT.

(a) The events set forth in paragraph 15(b) are Events of Default if and when GMAC gives any Signer notice of default. We agree to notify GMAC promptly upon the happening of any event that would be an Event of Default under either Credit Document upon the giving of notice by GMAC.

(b) After giving notice of default, GMAC may end the Account and/or demand repayment at once of the Total Balance Outstanding in any of the following events:

    (i)     There has been fraud or material misrepresentation by any Signer in connection with the Account;

    (ii)     Borrowers have failed to meet the repayment terms of the Agreement for any amount outstanding; or

    (iii)     Any action or inaction by any Signer has adversely affected the Property or any right of GMAC in the Property; to the extent permitted by law, this will include, but not be limited to, any Signer (or any legal representative or successor of any Signer) agreeing to sell, transfer or assign or selling, transferring or assigning any interest in the Property, without the prior written consent of GMAC.

(c) Notwithstanding any language in this Mortgage to the contrary, GMAC will not give notice of default unless permitted by applicable law and GMAC will give us any grace period, right to cure and/or reinstatement right required by applicable law. This paragraph 15 is intended to give GMAC all rights permitted by applicable law.

16. REMEDIES. IF BORROWERS DO NOT REPAY AT ONCE THE TOTAL BALANCE OUTSTANDING WHEN DUE, GMAC MAY EXERCISE ANY REMEDY AVAILABLE TO IT UNDER APPLICABLE LAW, INCLUDING FORECLOSURE.

17. APPOINTMENT OF RECEIVER. Upon an Event of a Default or our failure to pay taxes assessed against the Property and/or insurance premiums on the Property (which we agree shall constitute waste), GMAC shall be entitled to the appointment of a receiver if permitted by law.

18. SATISFACTION OF MORTGAGE. Upon payment and discharge of all sums secured by this Mortgage and termination of the Account, this Mortgage shall be void and GMAC shall satisfy this Mortgage.

19. REQUEST FOR NOTICES. GMAC requests that copies of notices of default, sale and foreclosure from the holder of any lien which has priority over this Mortgage be sent to GMAC at 100 Witmer Road, Horsham, PA 19044-0963.

20. EXHIBITS, SCHEDULES AND RIDERS, ETC. The terms of any Exhibit, Schedule or Rider attached to this Mortgage or executed and recorded with this Mortgage shall be treated as if fully set forth in this Mortgage. All of the terms of the Agreement are made part of this Mortgage.

21. TIME OF ESSENCE. Time is of the essence in this Mortgage.

22. ACTUAL KNOWLEDGE. For purposes of the Credit Documents, GMAC shall not be deemed to have actual knowledge of any fact until it actually receives notice as set forth in paragraph 11 or until it receives written notice thereof from a source GMAC reasonably believes to be reliable. The date of receipt shall be determined by reference to the "Received" date stamped on such written notice by GMAC or its agent.

23. TAXES. If taxes on mortgages or the debts they secure increase in any way after the date of this Mortgage, we shall pay the full amount of any such increase.

24. WAIVER OF STATUTORY RIGHTS. To the extent permitted by law, for ourselves and our successors and assigns, we hereby waive the benefit of all homestead, dower, curtesy, appraisement, valuation, redemption, reinstatement, stay, extension, exemption and moratorium laws now existing or hereafter enacted and any right to have the Property marshalled upon foreclosure. We further agree that any court having jurisdiction may order the Property sold as an entirety.

Bk 15497 Pg 470 #101715

**25. ASSIGNMENT OF RENTS; RECEIVERS; GMAC POSSESSION OF THE PROPERTY.** As additional security, we hereby assign to GMAC any rents due on the Property after an Event of Default or abandonment of the Property. In any action to foreclose this Mortgage, GMAC shall be entitled to the appointment of a receiver.

If an Event of Default occurs or we abandon the Property, GMAC, without notice, may enter upon, take possession of, and manage the Property. GMAC may then collect or sue in its own name for any rents due on the Property. All rents so collected shall be applied first to payment of the reasonable costs of operation and management of the Property (such as collection costs, receiver's fees, bond premiums and attorneys' fees) and then to the Total Balance Outstanding. GMAC and the receiver must account only for rents actually received.

Acts taken by GMAC under this paragraph 25 shall not cure or waive any Event of Default or invalidate any act done pursuant to notice of default.

We will not, without the written consent of GMAC, receive or collect rent from any tenant on the Property more than one month in advance. Upon an Event of Default, we will pay monthly in advance to GMAC or any receiver the fair and reasonable rental value of the Property or that part of the Property in our possession. If we fail to pay such rent, we will vacate and surrender the Property to GMAC or to such receiver. We may be evicted by summary proceedings.

**26. ATTORNEYS' FEES.** In any proceeding to enforce any remedy of GMAC under the Credit Documents there shall be allowed and included, to the extent permitted by law, as additional indebtedness in the judgment or decree, GMAC's reasonable attorneys' fees, if GMAC refers the Agreement for collection to any attorney who is not a salaried GMAC employee.

**27. CAPTIONS; GENDER; ETC.** The headings in this Mortgage are not to be used to interpret or define its provisions. In this Mortgage, the masculine gender includes the feminine and/or neuter, singular numbers include the plurals, and plurals include the singular.

**28. MERS.** Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage, but, if necessary to comply with local law or custom MERS (as nominee for GMAC and GMAC's successors and assigns) has the right: to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including but not limited to, releasing and canceling this Mortgage.

By signing this Mortgage, we agree to all of the above.

_____          _____
MORTGAGOR Zulma Lopez              MORTGAGOR Miguel Perez
                                    A/K/A Miguel A. Perez

_____          _____
MORTGAGOR                          MORTGAGOR

-5-

Bk 15497  Pg 471  #101715

---

**INDIVIDUAL ACKNOWLEDGMENT**

---

**COMMONWEALTH OF MASSACHUSETTS,**

COUNTY OF Hampden          ) SS.

On this 9th day of September 2005 before me, the undersigned notary public, personally appeared <u>Zulma Lopez And Miguel Perez, Wife And Husband</u> proved to me through satisfactory evidence of identification, which were  *Miguel A. Perez*  Massachusetts Drivers Licenses , to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

Notary Public Signature
Linda L. Audet.

My Commission Expires: 6-5-2010

-6-

Return to: MPD/EE
200 Lakeside Dr. Suite 248
Horsham, PA 19044